# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RONALD C. WON, Individually and On Behalf Of All Others Similarly Situated, | X : : : | Civil Action No. |
| Plaintiff, | : : | **03 12244 DPW** |
| vs. | : : : : | CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |
| BOSTON COMMUNICATIONS GROUP, INC., KAREN A. WALKER, and EDWARD H. SNOWDEN, | : : : : | MAGISTRATE JUDGE _____ **JURY TRIAL DEMANDED** |
| Defendants. | : X | |

Plaintiff, Ronald C. Won, ("Plaintiff") individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Boston Communications Group, Inc. ("Boston Communications" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

AMOUNT $ 150 5698
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. TDM
DATE 11/13/03

00001018.WPD ; 1

## NATURE OF THE ACTION

1.     This is a federal Class Action brought by the Plaintiff on behalf of himself and a Class consisting of all other persons who purchased the publicly traded securities of Boston Communications (NASDAQ: BCGI), between April 16, 2003 and July 16, 2003, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Additionally, the Company maintains its principal executive offices in this Judicial District.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

6.    Plaintiff, Ronald C. Won, purchased Boston Communications securities, as set forth in the accompanying certification attached hereto and incorporated herein by reference, and has suffered damages as a result of the wrongful acts of defendants as alleged herein.

7.    Defendant Boston Communications is a corporation organized and existing under the laws of Massachusetts with its principal place of business located within this judicial district at 100 Sylvan Road, Woburn, Massachusetts 01801.

8.    Defendant Karen A. Walker ("Walker") was, at all relevant times during the Class Period, the Company's Chief Financial Officer.

9.    Defendant Edward H. Snowden ("Snowden") was, at all relevant times during the Class Period, the Company's President, Chief Executive Officer, and a director.

10.    Defendants Walker and Snowden are collectively referred to hereafter as the "Individual Defendants." During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Boston Communications, were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

11.    Each of the Individual Defendants are liable as a direct participant with respect to a

fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Boston Communications' publicly traded securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme deceived the investing public regarding Boston Communications' business, operations, management, and the intrinsic value of Boston Communications' publicly traded securities and caused Plaintiff and other members of the Class to purchase Boston Communications securities at artificially inflated prices.

12.    In addition, the Individual Defendants, by reason of their status as senior executive officers and directors were each a "controlling person" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their position of control, the Individual Defendants were able to and did, directly or indirectly, control the content of various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period.

13.    The Individual Defendants, because of their positions with Boston Communications, were provided with copies of Boston Communications' reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had both the ability and opportunity to prevent their issuance or cause them to be corrected. The Individual Defendants had the opportunity to commit the fraudulent acts alleged herein. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.    The Individual Defendants are liable, jointly and severally, as direct participants in and co-conspirators of, the wrongs complained of herein.

## CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a federal class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class (the "Class"), consisting of all those who purchased the securities of Boston Communications between April 16, 2003 and July 16, 2003, inclusive, (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Boston Communications securities were actively traded on the NASDAQ Stock Exchange ("NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.

17.    Plaintiff's claims are typical of the claims of the members of the Class, because plaintiffs and all of the Class members sustained damages arising out of defendants' wrongful conduct complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel who are experienced and competent in class actions and securities litigation.

19.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

20. Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, in that defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    Whether the Company's publicly disseminated press releases and statements during the Class Period omitted and/or misrepresented material facts;

(c)    Whether defendants breached any duty to convey material facts or to correct material facts previously disseminated;

(d)    Whether the defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts; and

(e)    Whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

### Background

21. Boston Communications is a company that provides real-time subscriber management services to the wireless industry through a combination of proprietary software applications, a carrier-class-hosted environment, a voice resource network and a service and support organization. Its operating segments consist of billing and transaction processing services, roaming services and

prepaid systems.

22.    Boston Communications' financial results for the year 2002 were published in the

Company's Report on Form 10-K filed with the SEC on or about March 27, 2003. The Company

indicated that Verizon Wireless, Inc. ("Verizon"), Boston Communications' biggest client for billing

services, accounted for almost half of Boston Communications revenue in 2002. Thus far in 2003

Verizon has accounted for a little more than half of Boston Communications' revenue.

23.    This Class Action concerns defendants' materially false and misleading statements

during the Class Period. More specifically, Defendants misrepresented the following: (1) that

Boston Communications was aware that Verizon would not be renewing its billing services contract

with Boston Communications because Verizon was creating its own internal billing system instead

of continuing to use Boston Communications for billing services; and (2) that Boston

Communications was aware that Verizon's decision to create its own internal billing system would

lead to a significant loss of revenue for Boston Communications.

## Materially False and Misleading Statements Made During the Class Period

24.    The Class Period begins on April 16, 2003. On that date, the Company issued a press

release, stating, in pertinent part, the following:

> **Billing and Transaction Processing Services, which include the
> Company's Prepaid Wireless Services, Voyager Billing and
> Customer Care, and Payment Services, generated record
> revenues of $21.1 million in the first quarter of 2003,** a 74%
> increase over the first quarter of 2002 and an 18% increase over the
> 2002 fourth quarter. The increase in revenues, which have a
> corresponding low incremental cost, contributed to higher gross
> margins on Billing and Transaction Processing Services Revenues of
> 76%, compared to 68% in the first quarter of 2002 and 73% in the
> fourth quarter of 2002. The higher than expected revenues and
> corresponding gross margins were principally due to very strong net

prepaid subscriber additions of 455,000 for the quarter. Total prepaid subscribers on the platform are now 3.35 million, a 69% increase over March 31, 2002.

**"Our outstanding performance for the quarter reflects the solid positioning of our Billing and Transaction Processing Services business.** The strength of our prepaid subscriber additions for the quarter continues to validate our carrier customers' success in selling to the under-penetrated youth and budget conscious segments with attractive prepaid customer propositions that are based on solid carrier economics. This year in particular, gross additions across most all of our carrier customer programs continued with nice momentum well beyond the typical end of holiday promotions. More and more, our carriers are offering a rich consumer experience with postpaid-like features using our real-time rating, billing, and customer care solutions that are generating new growth while reducing operational costs and churn," commented E. Y. Snowden, President and CEO.

***

**"Our tremendous growth in first quarter subscriber additions was the key factor in our earnings growing more than 60% compared to the fourth quarter of 2002.** Although we are now entering the seasonally slower second and third quarters, we believe that our carrier's commitment to prepaid and our business model and value proposition will continue to position *bcgi* for growth and healthy profits. As a result, we are raising our annual 2003 earnings guidance," commented Karen A. Walker, Chief Financial Officer.

The Company is raising its 2003 GAAP earnings to $0.78 to $0.80 per share, which includes an estimate of $0.12 per share in legal costs primarily to defend the Freedom Wireless lawsuit. This guidance is more than four times higher than the Company's 2002 annual GAAP earnings of $0.19 per share. For the second quarter of 2003, the Company anticipates GAAP earnings of $0.19 to $0.20 per share, which includes $0.03 per share in estimated legal costs. **"Our business model continues to be validated and our overall financial position, with $48.6 million in cash and investments and no debt, gives us the strength to capitalize on weaknesses across the telecommunications industry.** This is evidenced by our recent building purchase that will initially house our second data center and our ability to continue to attract and retain top talent across our organization," commented Ms. Walker.

> **Mr. Snowden concluded, "We are obviously very pleased with our performance for the quarter and as a leader in real-time billing and transaction processing services, we feel that we are well positioned to continue to execute on our business plan.** By serving both the largest national carriers and the smaller regional U.S. carriers who have just begun to gain momentum with their prepaid offerings, we look forward to continuing to competently provide them the best platform to demonstrate competitive success in a challenging industry." (Emphasis added).

25.    Boston Communications' financial results for the first quarter of 2003, the period ending March 31, 2003, were repeated in the Company's Quarterly Report on Form 10-Q filed with the SEC on or about May 15, 2003. The Company's Form 10-Q was signed by defendant Walker. The Company stated, in pertinent part, the following:

> **Our Verizon Wireless prepaid wireless services contract and certain other contracts expire in 2003 and beyond. While we expect to renew these contracts, when and if each of the contracts is renewed, some contractual rates per minute may be lower than in previous years and at lower rates than we have estimated.** These contracts are not exclusive and therefore do not prevent our customers from using competitors' billing and transaction processing platforms.

26.    On June 11, 2003, the Company connived a meeting with Raymond James and Associates and its analyst Mike Latimore. At that meeting and as reported in Mike Latimore's June 12, 2003 report, the Company stated to Raymond James and Associates and its analyst Mike Latimore that it would not comment on its on-going negotiations with Verizon. The Company, however, did inform Raymond James and Associates and its analyst Mike Latimore that Verizon was "happy with [Boston Communications] and the outsourcing solution."

27.    The statements referenced above in ¶¶ 24-26 were each materially false and misleading because they failed to disclose and misrepresented the following material adverse facts

which were known to defendants or recklessly disregarded by them: (1) that Boston Communications was aware that Verizon would not be renewing its billing services contract with Boston Communications because Verizon was creating its own internal billing system instead of continuing to use Boston Communications for billing services; and (2) that Boston Communications was aware that Verizon's decision to create its own internal billing system would lead to a significant loss of revenue for Boston Communications.

## The Truth Begins To Emerge

28.     On July 16, 2003, after the market had closed, Boston Communications issued a press release announcing the truth about its contract negotiations with Verizon. The Company stated, in pertinent part, the following:

> Verizon Wireless Contract Renewal Update
>
> As the Company has stated in its public disclosures, its contract with Verizon Wireless is scheduled, according to its terms, to be renegotiated in 2003. The Company is currently in contract discussions with Verizon Wireless. The terms and conditions, including the length of the contract and pricing have not yet been determined. **Verizon Wireless has also requested that *bcgi* provide support services to assist Verizon Wireless in testing its own internal prepaid platform in 2004 which could potentially displace prepay services currently being provided by *bcgi*.** None of the Company's contracts are exclusive and its carrier customers have and continue to use and/or test competing products in certain markets. The Company believes *bcgi's* real-time transaction processing and support solutions best meet the technology, functionality and profitability goals of its carriers today, and in the future. (Emphasis added).

29.     On July 17, 2003, <u>Bloomberg</u> reported on the Company's July 16, 2003 conference call that followed its press release. <u>Bloomberg</u> also reported that Defendant Snowden stated in the conference call that on July 11, 2003 Verizon told Boston Communications that it was creating its

own internal billing system instead of continuing to use Boston Communications for billing services.

30.    The market reacted swiftly to this news, with the Company's stock falling 39%, or $8.46 from a closing price of $21.16 on July 16, 2003 to close at $12.70 on July 17, 2003.

### Undisclosed Adverse Facts

31.    The market for Boston Communications's publicly traded securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Boston Communications' publicly traded securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Boston Communications' publicly traded securities relying upon the integrity of the market price of Boston Communications's publicly traded securities and market information relating to Boston Communications, and have been damaged thereby.

32.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Boston Communications' publicly traded securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

33.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Boston Communications' business, prospects and operations.  These material

misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Boston Communications and its business, prospects and operations, thus causing the Company's publicly traded securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's publicly traded securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

34.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Boston Communications, their control over, and/or receipt and/or modification of Boston Communications's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Boston Communications, participated in the fraudulent scheme alleged herein.

35.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest

levels of the Company, including the Individual Defendants.

36.    Further, Defendants Walker and Snowden received proceeds of $1,214,491 for shares sold during the Class Period. Defendant Walker sold 14,418 shares for proceeds of $257,000 during the Class Period. Defendant Snowden sold 56,100 shares for proceeds of $957,491 during the Class Period.

**Applicability of Presumption of Reliance:**
**Fraud-On-The Market Doctrine**

37.    At all relevant times, the market for Boston Communications' publicly traded securities was an efficient market for the following reasons, among others:

(a) Boston Communications' stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Boston Communications filed periodic public reports with the SEC and the NASDAQ;

(c) Boston Communications regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Boston Communications was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

38.     As a result of the foregoing, the market for Boston Communications' publicly traded securities promptly digested current information regarding Boston Communications from all publicly available sources and reflected such information in Boston Communications' stock price. Under these circumstances, all purchasers of Boston Communications' publicly traded securities during the Class Period suffered similar injury through their purchases of Boston Communications' publicly traded securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

39.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Boston Communications who knew that those statements were false when made.

## COUNT I
### Violation of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against
### All Defendants

40.     Plaintiff repeats and reiterates the allegations set forth above as though fully set forth

herein. This claim is asserted against all defendants.

41.     During the Class Period, defendant Boston Communications and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: a) deceive the investing public, including plaintiff and other Class members, as alleged herein; b) artificially inflate and maintain the market price of Boston Communications' publicly traded securities; and c) cause plaintiff and other members of the Class to purchase Boston Communications' publicly traded securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants Boston Communications and the Individual Defendants, and each of them, took the actions set forth herein.

42.     These defendants: a) employed devices, schemes, and artifices to defraud; b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Boston Communications' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. These defendants are sued as primary participants in the wrongful and illegal conduct charged herein. The Individual Defendants are also sued as controlling persons of Boston Communications, as alleged below.

43.     In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 et seq.) and S-K (17

C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

44.    Boston Communications and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Boston Communications as specified herein.

45.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Boston Communications's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Boston Communications and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Boston Communications' securities during the Class Period.

46.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: a) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; b) each of the Individual Defendants, by

virtue of his or her responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; c) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and d) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

47.    These defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Boston Communications's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market prices of Boston Communications' securities were artificially inflated during the Class Period. In ignorance of the

fact that market prices of Boston Communications' publicly traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Boston Communications securities during the Class Period at artificially high prices and were damaged thereby.

49.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Boston Communications, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased the Boston Communications securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.    By virtue of the foregoing, Boston Communications and the Individual Defendants have each violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation Of Section 20(a) Of**
**The Exchange Act Against The Individual Defendants**

52.    Plaintiff repeats and reiterates the allegations as set forth above as if set forth fully

herein. This claim is asserted against the Individual Defendants.

53.     Each of the Individual Defendants acted as a controlling person of Boston Communications within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.     As set forth above, Boston Communications and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 13, 2003

**GILMAN and PASTOR, LLP**

David Pastor (BBO #391000)
Edward L. Manchur (BBO #316910)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906
Telephone: 781-231-7850
Fax: 781-231-7840

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
Chad E. Kauffman
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706

**Attorneys for Plaintiff**

00001018.WPD ; 1

20

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Ronald Won, (Plaintiff) declares, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the Complaint and retains Schiffrin & Barroway, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transactions in the Boston Communications Group, Inc. (Nasdaq: BCGI) security that is the subject of this action during the Class Period are as follows:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 300 | Bought | 5/9/03 | $17.38 |
| 300 | Sold | 5/19/03 | $14.98 |

List additional transactions on a separate sheet of paper, if necessary.

5.    During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws: N/A

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12 day of November, 2003.

Ronald C. Won

**RONALD WON**